**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NOVA WILDCAT SHUR-LINE HOLDINGS, INC., *et al.*,[1] | Case No. 23-10114 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 153** |

**PRELIMINARY OBJECTION OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO THE DEBTORS' STALKING HORSE MOTION**

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the chapter 11 cases of the above-captioned Debtors, by its undersigned proposed counsel, hereby files this preliminary objection to the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Selection of a Stalking Horse Bidder, (II) Approving Bid Protections in Connection Therewith, and (III) Granting Related Relief* (the "Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Committee supports the Debtors' efforts to maximize the value of their assets through a sale process for the benefit of all creditors.  However, the proposed Stalking Horse Agreement and proposed Bid Protections only highlight the significant risk of administrative insolvency and the absence of a benefit to any party other than the lenders, whose collateral is being marketed.  A key feature of the proposed Stalking Horse Agreement is a 180-day post-closing date period, during which the Debtors would be required to remain in bankruptcy and be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Nova Wildcat Shur-Line, LLC (8851); HBC Holdings, LLC (6461); HBC Chemical LLC (6379); World and Main (Air), LLC (0035); World and Main (Cranbury), LLC (3903). The location of Nova Wildcat Shur-Line Holdings, Inc.'s corporate headquarters and service address is 324A Half Acre Road, Cranbury, NJ 08512.

required to provide various services to the buyer.  But the Stalking Horse Agreement provides no assurance that either the buyer or the lenders will pay all of the costs associated with remaining in bankruptcy during that 180-day post-closing date period.

2.      Any post-closing wind down undertaken for the benefit of the lenders and a buyer must be cost-neutral to the estates and unsecured creditors.  The Court should not allow the buyer and lenders to reap the benefit of remaining in chapter 11 without also "paying the freight."

3.      The Committee also objects to the Debtors request to incur nearly $1.1 million in Bid Protections as administrative expenses, particularly when there is no mechanism to assure payment of the foreseeable costs and expenses of remaining in chapter 11 for six months, including professional fees and U.S. Trustee quarterly fees, among others.

4.      The Committee requests that the Court not approve the proposed Stalking Horse Agreement or the proposed Bid Protections, unless there is a commitment to pay all administrative expenses.  The Committee also requests that the other changes set forth below be made.

## RELEVANT BACKGROUND

5.      On January 29, 2023 (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.      On January 30, 2023, the Debtors filed a motion seeking authority to, among other things, borrow up to $48.5 million in post-petition financing from PNC Bank, N.A. ("PNC") [D.I. 20] (the "DIP Motion").  Among other things, the DIP Facility currently matures on March 31.

7.      On January 31, 2022, the Debtors filed a motion seeking approval of, among other things, certain bidding procedures and a sale process for substantially all of the Debtors' assets [D.I. 28] (the "Bidding Procedures Motion").  The Bidding Procedures Motion did not seek approval of any stalking horse bid or bidding procedures, but reserved the Debtors' right to seek

approval of same by a separate motion.  The Bidding Procedures Motion contemplated a sale transaction closing by March 31.

8.      On February 27, 2023, the Committee filed an omnibus objection to the DIP Motion and the Bidding Procedures [D.I. 86] (the "Omnibus Objection").  Among other things, the Committee specifically raised in its Omnibus Objection the glaring omission of any budget to cover the wind down costs of the Debtors' estates after March 31.

9.      On March 2, 2023, the Court conducted a hearing on, among other things, the DIP Motion.  During that hearing, proposed counsel for the Committee cross-examined the Debtors' witnesses regarding, among other things, the lack of a budget for the period after March 31.

10.     At the conclusion of the March 2 hearing, the Debtors, PNC, and the Committee announced a proposed resolution of the Committee's Omnibus Objection.  That resolution is set forth in the Order approving the DIP Motion on a final basis that was entered on March 8 [D.I. 156].

11.     On March 7, 2023, the Debtors filed this Motion seeking to designate the Stalking Horse Bidder as the stalking horse and seeking approval of certain Bid Protections.

12.     Among other things, the proposed Stalking Horse Agreement contemplates a sale of substantially all of the Debtors' assets (including inventory, accounts receivable, intellectual property, and other assets).  The proposed Stalking Horse Agreement further contemplates that the Stalking Horse Bidder would have until 180 days following the closing date to, among other things, continue to use and occupy the Debtors' leased premises (see, e.g., APA § 7.10).  The proposed Stalking Horse Agreement would also give the Stalking Horse Bidder until 180 days after the closing date to designate contracts and leases to be assumed and assigned or rejected (see, e.g., APA § 2.5(a)).

**OBJECTION**

13.　"In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see* 11 U.S.C. § 363(b).  When a debtor proposes to incur a breakup fee in connection with an auction or sale of estate property, the debtor must show that such fee was "actually necessary to preserve the estate." *In re O'Brien Enviro. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) (adopting the standard under 11 U.S.C. § 503(b) for allowance of post-petition administrative expenses to a request for payment of a breakup fee); *see In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010) (affirming bankruptcy court's order denying approval a breakup fee and approving certain other bid protections).

14.　As this Court observed at the March 2 hearing, if the lenders want to run a sale process in chapter 11 for their collateral, they must "pay the freight."  Similarly, if the proposed Stalking Horse Bidder or another buyer wants to keep the Debtors in bankruptcy for 180 days (or some other duration) after the closing date while they complete an orderly sale or disposition of the inventory and other Acquired Assets, that buyer needs to pay all costs associated with remaining in bankruptcy, or reach some other arrangement with the lenders.  Any such arrangement must be <u>cost-neutral</u> to the estates and unsecured creditors.  What the lenders and buyer cannot be allowed to do is impose those costs, or the real risk of administrative insolvency, on unsecured creditors.

15.　Among other things, the Committee has identified a number of categories of Excluded Liabilities or other obligations of the Debtors that may ripen into unpaid administrative expense claims.  These include, without limitation:  (i) rent for the pre- and post-closing date

4

periods; (ii) tax liabilities (*see* APA §§ 2.4, 10.1); (iii) employee liabilities (*see* §§ APA 2.4, 9.1);

(iv) contract and lease obligations (*see* APA § 2.5), to the extent not otherwise funded or assumed;

(v) pre-closing date prorated expenses (*see* APA § 3.3), to the extent not otherwise funded or

assumed; (vi) transition service related expenses (*see* APA § 7.10), to the extent not otherwise

funded; and (vii) the proposed Expense Reimbursement and/or Breakup Fee which, upon

termination, could give rise to a claim by the buyer for administrative expenses (*see* APA § 12.1,

12.2).  Similarly, if the lenders and the buyer want the Debtors' cases to remain in chapter 11, they

need to come to an understanding with the Debtors' professionals and fund a reasonable post-

closing date carve-out.

16.     These costs and expenses of remaining in bankruptcy for 180 days post-closing are

entirely foreseeable today.  Notwithstanding, the current Stalking Horse Agreement does not

provide a reasonable assurance that all costs and expenses associated with that 180-day post-

closing period will in fact be paid.

17.     The Committee respectfully submits that the Court should not approve the proposed

Stalking Horse Agreement or the proposed Bid Protections unless the Stalking Horse Bidder and/or

the lenders (whose collateral is being marketed) commit to paying all costs and expenses

associated the Debtors remaining in bankruptcy during the 180 day post-closing period.  *See*, *e.g.*,

*O'Brien*, 181 F.3d at 529-30 (discussing the bankruptcy court's decision to defer consideration of

the proposed breakup fee and expense reimbursement until the sale hearing); *see also Reliant*

*Energy*, 594 F.3d at 204 (discussing the bankruptcy court's decision to deny approval of a breakup

fee, but approving certain other bid protections such as a minimum overbid).

18.     In addition to the foregoing, the Committee requests that the following changes be

made to the proposed Stalking Horse Agreement:

a. Books and records (APA § 2.1(*l*)) – The Committee and any trustee appointed or elected in these cases should be given full access to the Debtors' books and records after the closing date.

b. Statements and notices – The Committee and any trustee appointed or elected in these cases should be copied on all statements, notice, and communications contemplated under the Stalking Horse Agreement, including in connection with the purchase price adjustment (APA § 3.4) and the tax allocation (APA §10.5), among others.

c. Avoidance Actions (APA § 2.1(q)) – There should be reasonable deadlines (e.g. 30 days after closing) by which the buyer advises the Committee of the parties that will not be Designated Parties and an outside date by which the buyer will finalize the list of Designated Parties, so that the Committee or other estate representative can proceed expeditiously to investigate and, if appropriate, bring any Shared Claims.

In addition, the Committee requests that section 2.1(q) subsection (ii) be revised to clarify that the buyer is acquiring Avoidance Actions as to "(ii) any Affiliates or Related Persons of any of the persons listed in clause (i) but only with respect to Avoidance Actions against the persons listed in clause (i) . . . ."[2]

19. Prior to filing this objection, the Committee raised these issues with the Debtors. The Committee is continuing to discuss these matters with interested parties in advance of the hearing. The Committee reserves the right to raise any additional objections prior to or at the hearing. Further, the Committee reserves the right to raise these and any other objections at any hearing to consider approval of any sale of a portion or substantially all of the Debtors' assets.[3]

---

[2] For example, if an Affiliate or Related Person (who is not a designated Person) also received payments within the 90 days prior to the Petition Date, that Affiliate or Related Person would remain directly liable for any avoidable transfers that it received.

[3] For the avoidance of any doubt, the Committee will oppose any attempt to use the Committee Carve-Out—which was negotiated for the benefit of unsecured creditors—to pay any costs or expenses of the estates associated with a choice by the lenders and a buyer to sell the assets during a post-closing down period. The Committee reserves the right to object to any application for payment of professional fees or expenses, or other administrative expenses, that are not paid by either the lenders or the buyer.

WHEREFORE, for the reasons set forth above, the Committee respectfully requests that the Court (i) require that the Stalking Horse Agreement and any other bid to satisfy the conditions set forth above and (ii) grant such other and further relief as the Court deems just and proper.

Dated:  March 10, 2023                    ARCHER & GREINER, P.C.

                                          */s/ Bryan J. Hall*
                                          Bryan J. Hall (No. 6285)
                                          300 Delaware Avenue, Suite 1100
                                          Wilmington, Delaware 19801
                                          (302) 777-4350
                                          (302) 777-4352 (fax)
                                          bjhall@archerlaw.com

                                          Stephen M. Packman, Esq. (admitted *pro hac vice)*
                                          Mariam Khoudari, Esq. (admitted *pro hac vice)*
                                          Three Logan Square
                                          1717 Arch Street, Suite 3500
                                          Philadelphia, Pennsylvania 19103
                                          (215) 963-3300
                                          (215) 963-9999 (fax)
                                          spackman@archerlaw.com
                                          mkhoudari@archerlaw.com

                                          Jiangang ("James") Ou, Esq.
                                          (admitted *pro hac vice)*
                                          3040 Post Oak Blvd., Suite 1800-150
                                          Houston, Texas 77056
                                          (713) 970-1066
                                          (713) 583-9518 (fax)
                                          jou@archerlaw.com

                                          *Proposed Counsel to the Official Committee of
                                          Unsecured Creditors*

226829791v1

7

**CERTIFICATE OF SERVICE**

I, Bryan J. Hall, hereby certify that on March 10, 2023, I caused to be served the foregoing document (i) by CM/ECF upon those parties registered to receive such electronic notifications in the lead case, and (ii) by email upon the following parties:

| | | |
|---|---|---|
| John H. Schanne | Office of the United States Trustee | john.schanne@usdoj.gov |
| Kurt F. Gwynne | Reed Smith LLP | kgwynne@reedsmith.com |
| Jason D. Angelo | Reed Smith LLP | jangelo@reedsmith.com |
| Omar J. Alaniz | Reed Smith LLP | oalaniz@reedsmith.com |
| Bradley J. Purcell | Reed Smith LLP | bpurcell@reedsmith.com |
| Devan J. Dal Col | Reed Smith LLP | ddalcol@reedsmith.com |
| Luke A. Sizemore | Reed Smith LLP | lsizemore@reedsmith.com |
| Amy M. Kerlin | Reed Smith LLP | akerlin@reedsmith.com |
| Douglas R. Gooding | Choate, Hall & Stewart | dgooding@choate.com |
| Daniela Spanos | Choate, Hall & Stewart | dspanos@choate.com |
| Regina Stango Kelbon | Blank Rome LLP | regina.kelbon@blankrome.com |
| John E. Lucian | Blank Rome LLP | john.lucian@blankrome.com |
| Gregory F. Vizza | Blank Rome LLP | gregory.vizza@blankrome.com |
| Deborah M. Perry | Munsch Hardt Kopf & Harr, P.C. | dperry@munsch.com |
| Jenny R. Kasen | Kasen & Kasen, P.C. | jkasen@kasenlaw.com |
| David A. Kasen | Kasen & Kasen, P.C. | dkasen@kasenlaw.com |
| Shanti M. Katona | Polsinelli PC | skatona@polsinelli.com |
| Gary D. Bressler | McElroy, Deutsch, Mulvaney & Carpenter, LLP | gbressler@mdmc-law.com |
| Gaston P. Loomis | McElroy, Deutsch, Mulvaney & Carpenter, LLP | gloomis@mdmc-law.com |
| Geoffrey G. Grivner | Buchanan Ingersoll & Rooney PC | geoffrey.grivner@bipc.com |
| Karen C. Bifferato | Connolly Gallagher LLP | kbifferato@connollygallagher.com |
| Sari B. Placona | McManimon, Scotland & Baumann, LLC | splacona@msbnj.com |
| Shawn M. Christianson | Buchalter, P.C. | schristianson@buchalter.com |
| Rachel B. Mersky | Monzack Mersky and Browder, P.A. | Rmersky@Monlaw.com |
| David J. Molton | Brown Rudnick LLP | dmolton@brownrudnick.com |
| Eric R. Goodman | Brown Rudnick LLP | egoodman@brownrudnick.com |
| Gerard T. Cicero | Brown Rudnick LLP | gcicero@brownrudnick.com |

*/s/ Bryan J. Hall*
Bryan J. Hall (DE No. 6285)